Next case is number 09-1097, Kartner against the Alamo Group. Mr. Moy. Thank you, Your Honor. Good morning. May it please the Court, this is an appeal of a district court's claim construction that rendered the claims at issue, claims 5 and 12 of the 284 patent, invalid for violating the written description requirement of 35 U.S.C. section 112. The claims at issue in this appeal are directed to a circuit for controlling the deceleration of a hydraulic motor when the supply of hydraulic fluid from the pump is cut off. The specific reference to claim 5, the circuit includes a first hydraulic fluid line that connects the pump to the motor, a first control valve in that first fluid line that controls the flow of fluid from the pump to the motor, a second hydraulic fluid line or return line that connects the motor back to the control valve, and a third hydraulic fluid line that the second fluid line to the first fluid line even when the control valve is in a closed position that allows the motor to continue rotating when the supply of fluid is cut off from the pump. Mr. Moy, let me just ask you one question, when you're in the, the machine is running, you turn it off, gradually through operation of the third line and the orifice that we'll I'm sure be discussing, the momentum of the blade slows down, where does the fluid that is in the circuit go? Does it end up going into the reservoir? Not at that stage your honor, when the, when the way this circuit works, when the, it looks like I thought there was some, it was referenced to a couple of openings that allowed when the motor had been running and was off and de-acceleration had occurred that it could go into the reservoir at 52. If you look at that figure one your honor of the patent drawings, when the control valve is in the off position which is as it's shown there, there's no place for the fluid to go, the fluid is stuck in the circuit, the motor, the motor continues to rotate, the motor is acting as a pump and it's actually increasing the pressure and if the relief valve opens up it recirculates in that, in that upper, upper circuit. 14, 20, 14, 24 circuit. Right, 14 through the motor, 24 and then through 40, the third fluid line and it continues to rotate until the operation of the orifice slows the, the, the fluid flow down enough that the motor stops. And then at that point it, the motor stops and the fluid just hits where it is. The fluid is in that circuit until such time as the control valve is opened and it starts  to rotate. And the, the other elements as you mentioned in the third fluid line are a relief valve which is item 42 in figure one which as expressly stated in the claim regulates the flow of fluid in the third line and then the flow control orifice which limits the speed of fluid flow through the third fluid line when that system is operating in that manner. The, the claims define the fluid control orifice as being constantly operative and as the construction of the term constantly operative or said flow control orifice being constantly operative that's, that's at issue. The parties have stipulated that as that term is construed claims five and twelve are invalid under section 112 because the specification does not contain a written description of, of that, the subject matter of that claim. There's no, the district court construed that term to mean that the fluid control orifice continuously slows fluid when the first control valve is in the open or the closed position. When the fluid control valve is in the open position and operating the motor there is no fluid flow through that third line. It, the fluid flows from the moat, from the pump up to the motor and back down through the control valve into the sump. It is only when the pressure sensed by the relief valve is high enough to open the relief valve that there is ever any flow through that third line and through the, the flow control orifice to be slowed. So, what happens if you're running the motor, you turn it off, okay, and as you said earlier fluid is just sitting in the loop so to speak, right? Would that mean there'd be some fluid in the third line? There's probably going to be fluid but not flowing in the third line. It will stop at the relief valve, there will be no flow in that, on the left part of the third fluid line. Now what would happen then if you drive, so there is, I'm just trying to understand if there's fluid in that third line after the motor has been running then turned off? It would sort of be, there would be some fluid? There probably is going to be some fluid in there, your honor, but it depends on the dynamics of the situation. There's not going to be any flow because there's no exit for the third fluid line until that relief valve opens up. And that relief valve opens up only when, in the way it's designed, the relief valve opens up when the control valve is closed and the motor wants to continue to turn. It operates at a pump, as a pump, it forces fluid down through line 24 which creates high pressure on the relief valve, opening the relief valve, so that the fluid can go back through the third line up to the motor and recirculate until the orifice has slowed it down enough to stop the motor. But there might be some... There could very well be some fluid but it's not, the fluid... Because if the motor stops... If the motor stops then the fluid stops. But wouldn't there maybe still be some fluid down in the... But it's not flowing. If the motor stops, as soon as the motor slows down enough so that the pressure closes that relief valve, there again is no flow through the third fluid line. But what if there's fluid that's between the relief valve and I guess point 40? It's not flowing. It's not flowing so that the orifice doesn't slow it down. The district corps construction requires that orifice to continuously slow fluid flow. And if there's no fluid flow through that third fluid line, then it can continuously slow fluid flow. Doesn't it presume that the system is operating? If it's not operating then... Well, the claim construction first of all doesn't say that. And secondly, when the system is operating as it's intended to rotate the motor, there is no flow through that third fluid line. Because it's going from the pump to the motor and then back. And bypassing the third line because that relief valve doesn't open up. And so one of the grounds for error in the corps construction was that she ignored the operation of that relief valve. Which the parties in the court agreed means that the relief valve controls whether and how much fluid may flow through that third line. So the claim itself provides that there's the concept of there not being any flow through that line. So if there's no flow through that line, the orifice can't slow it down. The specification does not provide any disclosure of a system where the orifice is always slowing fluid flow through that third line. And the most, I think the most important or the most insightful source for what that term means is in the prosecution history where the term constantly operative was added. And it was added to distinguish the claim from a prior art reference, Stofflet et al. Stofflet would flip the third line into connection. Exactly, Your Honor. In Stofflet, the constriction was in a valve envelope. And when the valve envelope was moved to one position, the fluid could flow through that constriction. In other words, if you look at, I'll make sure you understand this, if you look at Stofflet, I guess it's a picture of it at... 109, Your Honor. 109, yeah. What happens is when the solenoid operates, what's labeled 53 moves to the right. So it's in line with 49 and 50, right? Right. 49 and 50 are analogous to the third fluid line in the 284 patent. Just one question. Are you urging the same, are you saying that we should construe the claim as you urged in the district court? Are you urging, I mean, I think you urged a claim construction in the district court to the effect that the flow control orifice is always connected to the third line of fluid, to the third fluid line, as opposed to being connected only through the actuation of a solenoid. I mean, I think that's, in your brief, it says that's what you urged in the district court. Is that the construction you're urging now? Your Honor, you know, at one level, we just want to get a correct construction that comports with specification. I think my preference would be for the construction to be as we originally proposed with perhaps one addition that, with a term like by way of example, so that the, you know, when a jury is considering a court's construction, they don't get too tied into the, you know, this solenoid not being there. The 284 patent had another embodiment of a circuit that actually had, similar to Stofflet, a flow control orifice as part of the valve. It was all up on the side. Right. It was part of the valve. The valve opened in one way, then the orifice was inserted. That's not a minor enlargement that you're suggesting. I don't, is that in your brief? I don't recall that. I think the brief characterized our original proposal as referring to actuation of a solenoid as by way of example. That was the intent. It probably should have been added the first time around, Your Honor. Because I was just looking at page 3 of your brief, and you list, you show the two, I guess I'll call them the competing claim constructions in the district court. Right, Your Honor. And I just wanted to clarify if that's, if the construction you offered in the district court is the one you're urging. We are perfectly fine with what we offered in the district court, Your Honor. Okay. Let's save me a little time and let's hear from the other side. Thank you, Your Honor. Mr. O'Rourke. Good morning, Your Honors. May it please the Court. The district court's claim construction was faithful to the Phillips case, and in particular paid attention to the literal language of the claim, constantly operative. Certainly the court considered the prosecution history, but looked at constantly operative and concluded that that related to the function of the flow control orifice, as opposed to where it was placed in the circuit, or whether it was connected or where it was located. In fact, the claims already speak to where the flow control orifice is located. It says in both Claims 5 and Claim 12 that it's located in the third fluid line. In Claim 5, it says flow control orifice located to said third fluid line. And it has similar language with respect to Claim 12. So the court would recognize implicitly that to not give some functional requirement to the term constantly operative, in effect it would be reading constantly operative out of the claim. It wouldn't have any meaning. But you entered into a stipulation that the construction that the court chose wasn't supported by the written description? We entered into a stipulation. The way this issue of invalidity came up was... The question is... I'm sorry, I'm sorry. The answer is we entered into a stipulation. In that stipulation, the plaintiffs alone made the assertion that under that, the court's claim construction, that interpretation was invalid. We joined the stipulation, but we never made the argument that under the construction... If you agreed that the claim construction was not supported by the written description, how can the claim construction stand? I don't believe we ever agreed on that point. You entered the stipulation. But the stipulation reads... How do we know what was really in the back of your mind? I'm sorry? If that was what you stipulated, and now you say you didn't mean it? No, I'm not saying we didn't mean it. We always felt there's a way that you could reconcile the language of the claim such that it wasn't necessarily invalid for failure to meet the written description requirement. In the stipulation itself, and I refer the court to page A4, it says, plaintiffs hereby stipulate... What page is that? I'm sorry, A4. A4? Paragraph 9. It says, for purposes of judicial economy and based upon the court's construction of the claim terms and flow control orifice being constantly operative, plaintiffs hereby stipulate, subject to their right of appeal, the court's claim construction, any final judgment based on, that the court may enter an order stating claims 5 and 12 are invalid for failure to meet the written description requirement. So that was an argument they made in their request for reconsideration of the court's order granting the claim construction that we'd offered. We never agreed with that statement. We never said, you're right. We really expressed no opinion on that. But we thought that you could reconcile the specification with the claim construction adopted by the district court. Okay, because the final judgment order refers to it as a stipulation of patent invalidity. Well, that was the way it was captioned, certainly for purposes of getting the court to enter a judgment. But we were careful all along to not say that we agreed with that because that's not the argument that, that's not the position that we had taken when the request for reconsideration was filed. It was certainly an argument that they'd made all along and after they made that argument and lost the request for reconsideration, we felt they were bound by the arguments that they had made to the district court that the claim was invalid under the construction that they had, the court had issued. Which brings us to the construction because a construction that violates the written description requirement can't be purchased. Well, I think there's press in this court that says that it can be, that there are cases and it's not something we focused on in our briefing. Claims are part of the specification. You construe the claims in light of the specification. That's correct. You say if it's not construed in light of the specification, then it's invalid. But it can't be the correct construction if it's not construed in light of the specification. Well, I think it's, clearly it's a requirement of this court's law that you construe claims in light of the specifications. Yes. There are cases before the court, and again this is not something that's briefed, but I know there are cases before this court that have construed claims in a certain way and then determined that based on that construction they're incompatible with the specification as written. In other words, they're... If you look at those cases, you'll see that the parties have said I need this construction in order to obtain infringement or non-infringement or whatever they're after. And then it's held, well, if that's the construction you need, and it's not supported by the specification, then the claim would be invalid. But that's not what we have here. Well, I think in the case that I'm thinking of, and I'm sorry I can't remember the name of it, but there was a construction... Let's talk about the mainstream of our law, which requires that the claims be construed in light of the specification. And under that requirement, that's what the court did in this case. The judge construed the claims in light of the specification, including the language even, which is the focus of debate, what the significance of that term was in the construction. Our client had offered what the meaning of that was to the district court, and there was no alternative explanation as to the significance of that term in the briefing before the district court. The appellants had never taken a position as to what the meaning of even, the significance of even, in Claim 5 had on the construction of constantly operative. So they're raising that issue for the first time in their appeal brief. Did you object to the plain meaning of that word before the district court? We argued that as to the term even, we said the significance of it was it had to have some meaning, and the meaning of it was that the flow control orifice had to continuously slow fluid when the first valve is in the open or the closed position. Because what the literal language of the claim says is, said third fluid line allowing a flow of hydraulic fluid from second fluid line to said first fluid line, even when said control valve is in a closed position. So our argument was, well, if it does that, even when the control valve is in its closed position and the inference is that it does it when it's in the open position, and indeed the language, the functional language, continuously, excuse me, constantly operative, worked hand in hand with that construction. So the two questions I have, there would be times though, the district court, I guess, adopted your construction, namely the flow control orifice continuously slows fluid flow when the first control valve is in the open or closed position, but there's not always going to be fluid flow when the valve is in the open position, except if there's, I guess, an overload of pressure that opens the relief valve, what is it, 42? Is that the relief valve? There won't be fluid flow in there. There won't always be fluid flow in there. And the second thing is, it did seem to me that the claim construction that was urged by, I guess, Kartner, yeah, Kartner, did seem to have some support in the prosecution history, because in the prosecution history, I guess we have it at A101, they distinguish Stouffle, they say, it neither teaches nor discloses a hydraulic motor deceleration system having a hydraulic circuit in which a relief valve is located in the third fluid line and a flow control orifice, which is constantly operative, rather than being solenoid control, as in Stouffle. So they're saying we're always in the line, unlike in Stouffle, where the solenoid moves us over, so we're in line with 48 and 49. Right, well, as to the first point, fluids won't always be flowing through the line. We think when it's in its deceleration mode. The claim is drawn to a system or method of decelerating, and the language in the claim indicates that it's in an operating state, not that it's in a shutdown state. I agree, there's no question that when it's in the decelerating mode, there is going to be fluid in the third line, no question about that. But when it's not in the decelerating mode, when it's just in the operative mode, when the mower is going along the road and the blade is spinning and everything, the fluid is going to be moving in the 14 motor 24 back loop, so there won't be anything in the third line. Well, the first part of that I agree with. The second part, I don't know that the answer to that is entirely clear from the specification. One of the things we don't know is what the pressure setting is on the relief valve. So we don't know the condition, when that's going to be open and allowing fluid to pass or not. We just don't know, we didn't speak to that. I'm wondering, though, if the claim construction which the district court adopted is perhaps less in tune with what happens than the other construction. I don't know that it is. I don't think that it is because it's a, there's no question there's a requirement in the claim for a relief valve in that third fluid line. We don't know what the pressure setting is on that. We're saying there could be times when the motor is in an operative, not decelerating mode, when fluid would enter because of a pressure. Yeah, whatever the pressure setting is in that relief valve. There is a reference to that in the spec, I think. Well, there's a reference in the specification to relief valve, the operation of relief valve 52, not relief valve, there's virtually nothing on the relief valve 42. So those are, they're different. The second point is, Mr. Moy said that, suggested that the district court had ignored the operation of the relief valve in rendering a construction, but there was never any argument made by the plaintiff at the claim construction hearing or at the hearing prior to in the briefing saying that that relief valve construction or the operation of the system required the construction that they were advocating for. That's a new argument that was made here for the first time. As to Judge Shaw, your question about the prosecution history and the significance of the amendment over the Stoufflet reference, the only thing that I think is fair to infer from that claim construction is that the applicant regarded Stoufflet with the solenoid control, flow control orifice as something that was not constantly operative. And they said, you know, it's just said here today that we're using that as an example of what's not covered by the term constantly operative. But we don't know from the prosecution history what the term constantly operative does mean. And, in fact, we've had six different constructions here in this case that have been proposed. But all of them effectively read constantly operative out because they speak to only where the flow control orifice... So let me ask you, what is wrong with a claim construction that says the flow control orifice continuously slows fluid flow when there is fluid in the third fluid line, whether the first control valve is in the open or closed position? Well, it still doesn't speak to the function of constantly operative. It's a functional limitation. Thank you. Any more questions for Mr. Arjo? Thank you, Mr. Arjo. Thank you. Mr. Moy. Thank you, Ron. I want to address the issue of even, which the district court seized on as having significance. The claim said that flow occurs even when the control valve is in the closed position. And the district court took that as meaning that there must be flow through the control orifice when the valve is in the open or the closed position. It took me a while to figure out exactly how she came to that conclusion. The claim language only talks about what happens when it's in the closed position. In our reply brief here, we explained a better way of looking at that is that one would presume that flow would stop when the control valve is closed, but the third fluid line in that circuit allows for the possibility of fluid flow even when that control valve is closed. And frankly, this morning, I was also looking at claim 12 of the 284 patent, which does not include the word even, but it does have the control orifice being constantly operative. Mr. Moy, will the relief valve, I'm thinking of, I guess, item 42. Yes, Your Honor. In figure 1, we know that that operates when we're in the deceleration mode, correct? Correct, Your Honor. Will it ever operate when the device is in an operative mode? Possibly, say if return line 24, these are flexible hydraulic lines. Say if there was a kink in that, that might cause that relief valve to open up because it would increase the pressure at the outlet. That's the only... What do you think of a claim construction that says basically the same one I indicated to Mr. Oldham, said the flow control orifice continuously sews fluid when there is fluid in the third circuit or the third fluid line, whether the control valve is in the open or closed position. We offered something similar to that to the district court to try to, in my view, rehabilitate our construction. I think we said when there's fluid flow through the third fluid line. Your point is the key is having some concept of there being fluid in that third line. There has to be fluid flow for the flow to be slow, Your Honor. There's no question about that. I want to make one reference to Claim 12. Claim 12 includes a step of blocking a flow of fluid from the motor to the pump and allowing a flow of fluid between the first and second fluid lines without a loss of fluid, thereby enabling said motor to continue turning. That essentially says that we allow fluid through the third fluid line even when the control valve is closed, which blocks fluid flow from the motor to the pump. It's the same concept without using the word even, and it says nothing about what happens in the third fluid line when the control valve is open. That's really not material to the operation of the control orifice. Any other questions? Any more questions? Thank you, Your Honor. Thank you. Thank you, Mr. Moore, and thank you, Mr. Aldrich. Case is taken under submission. All rise.